HIRAM C. BENNETT et al., appellants,

v.

OSCAR KEEN, receiver of E. F. Beck & Son, respondent.

[Filed June 19th, 1899.]

1. The president of a corporation, though the active manager of its affairs cannot encumber its property by a mortgage without the concurrence of its board of directors.

2. The subsequent ratification of the mortgage by the directors, having been made in contemplation of the insolvency of the corporation, did not give the mortgage validity.

3. The receiver of the corporation, as the representative of creditors, may urge the objection that such mortgage was not obtained in such a manner as to be binding upon the corporation.

On appeal from a decree advised by Washington B. Williams advisory master, in *Howell et al.* v. *Beck & Son.*

*Mr. Robert Carey*, for the appellants.

*Mr. John R. Hardin*, for the respondents.

PER CURIAM.

The decree appealed from is affirmed, on the grounds stated in the finding of Advisory Master Williams, who filed the following conclusions:

The question in the cause is upon the validity of the second mortgage, set up in the answer of H. C. Bennett & Company. It was executed by Theodore E. Beck, as president of the defendant corporation, E. F. Beck & Son, to Bennett & Company, to secure upon certain real estate of the corporation its existing indebtedness to them, and such indebtedness as should be owing to them at one year from its date. The corporation consisted of Theodore E. Beck and his three sisters, he and they holding all the stock and constituting the board of directors. The board

held no meeting from December, 1894, until September 2d, 1897, hereafter referred to. The entire charge and management of the business of the corporation was left in the hands of the president, and the other directors had no actual knowledge or information concerning the conduct of its affairs. The mortgage was made and delivered to Bennett & Company on March 19th, 1896, but not recorded, the mortgagees choosing to hold it to be recorded afterwards at their option.

The mortgage declares that it is made and accepted as a collateral security for all moneys due from the corporation, "E. F. Beck & Son," to H. C. Bennett &.Company, and for all advances and moneys to be made or loaned during the continuance of the mortgage. Its proviso states that if the mortgagor shall pay to the mortgagees the sum of .$15,000 in one year from the date thereof, or such sum not in excess of $15,000 as shall then be found to be due and owing then, &c. At the making of the mortgage about $10,000 were owing to Bennett & Company, represented by several notes. The same credit, and for part of the time a larger credit, was continued after the mortgage was given. At the end of one year from its date $11,500 were owing, represented by six notes then existing, but of this amount which was then owing it appears that only $4,000 were still owing down to and at the time of the insolvency, which was represented by the following renewal notes : Note of August 24th, 1897, at one month, $1,500 ; note of August 9th, 1897, at one month, $2,500, the rest of the indebtedness which existed at the end of one year from the date of the mortgage having been paid.

This $4,000 of continued indebtedness which existed on and before March 19th, 1897, and $7,000 subsequently incurred, constituted the whole indebtedness at the time of the insolvency.

Passing for the present the question when the insolvency occurred, the next material fact is that on September 2d, 1897, the directors of "E. F. Beck & Son" held a meeting and adopted a resolution "approving and confirming" the action of the president in executing and delivering this mortgage.

The mortgage was recorded on the next day.

"E. F. Beck & Son 'was adjudged insolvent in proceedings

for that purpose in this court a few days later, viz., September 17th, 1897, and the receiver then appointed claims, by his answer and cross-bill in this suit, that this mortgage is not valid as against him and the creditors at large whom he represents.

It seems to be settled in this state that the president of a business corporation does not derive power to mortgage its lands by implication from the ordinary duties of his office. *Leggett* v. *New Jersey Banking Co., Sax. 547; Stokes* v. *New Jersey Pottery Co., 17 Vr. 237.*

And there is no evidence in this case of any usage that the president of this corporation should exercise such a power as incident to its business.

Hence the previous order of its directors or their subsequent ratification, either implied or express, was necessary to give the mortgage validity. There was no resolution or direction to make this mortgage, and no ratification can be implied in this case from the fact that the corporation received benefit by the continuance of the credit by Bennett & Company on the strength of the mortgage, because it is shown that the directors knew nothing about it. Knowledge is necessary to acquiescence.

The express ratification by the resolution of September 2d, 1897, can only avail against intervening rights in case the corporation was then competent to make a valid mortgage to Bennett & Company for the purpose for which they claim to hold it. *Thomp. Corp. Off. § 5305; Cook* v. *Tullis, 18 Wall. 332, 338.*

The testimony of Mr. Hardin shows that, on September 2d, 1897, Mr. Theodore E. Beck, the president of the corporation, informed him that it was hopelessly insolvent and had actually suspended business on the Saturday previous, and that he wished to secure Bennett & Company for their indebtedness. On the same occasion Mr. Beck informed Mr. Bennett of the insolvency and of his desire to secure Bennett & Company's claim; and Mr. Hardin advised them that in his judgment this could not at the time be successfully done. Thereupon, under advice of other counsel, the directors' meeting was held and the resolution ratifying the mortgage passed, and on the next day, September

Bennett v. Keen.

3d, the mortgage was placed on record. The adjudication of insolvency was made on the 17th of the same month.

It cannot be doubted on this evidence that this ratification was made in contemplation of the insolvency; and if, as has been said, the company could not ratify the mortgage unless it was at the time in a legal position to give a valid mortgage to secure an existing creditor, it follows that the claim of Bennett & Company to a preference by virtue of this mortgage conflicts with the prohibition of section 64 of the Corporation act and cannot be sustained.

That this clause prohibits such preferences is declared in the decisions upon the same provision when it was formerly in force, cited in *Wilkinson* v. *Bauerle, 14 Stew. Eq. 635.* A decree should therefore be advised in accordance with the prayer of the receiver's cross-bill.

The amount of indebtedness which this mortgage should be deemed to secure at the present time if its validity were sustained, was discussed on the hearing, and it seems to me that reading the two clauses of the mortgage on this subject together and applying the rule of stricter construction against the creditors seeking preference, they should be construed as confining the security to such part of the indebtedness existing on March 19th, 1897 (the end of one year from date of mortgage), as still remained owing at the insolvency. This, as already shown, was $4,000 and interest. But having reached the conclusion that the mortgage is invalid as against the receiver, this question is immaterial at present.

*For affirmance*—The Chief-Justice, Van Syckel, Dixon, Garrison, Gummere, Collins, Bogert Hendrickson, Adams, Nixon, Vredenburgh—11.

*For reversal*—None.